## PERSONAL PROPERTY DECLARATION

I, (name of declarant) Angeles Prado                , declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property (specify):

    a.  ☐ I am the Movant.

    b.  ☒ I am employed by Movant as (title and capacity): See Supplement

    c.  ☐ Other (specify):

2.  a.  ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐ Other (see attached):

3.  The Property is:

    a.  ☒ Vehicle (year, manufacturer, type, model and year): 2020 Lamborghini Huracan EVO Spyder Convertible 2D

        Vehicle Identification Number: ZHWUT5ZFXLLA14904
        Location of vehicle (if known): Debtor

    b.  ☐ Equipment (manufacturer, type, and characteristics):

        Serial number(s):
        Location (if known):

    c.  ☐ Other personal property (type, identifying information, and location):

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                Page 6                          F 4001-1.RFS.PP.MOTION

4.  The nature of Debtor's interest in the Property is:

    a.  ☐  Sole owner

    b.  ☐  Co-owner (*specify*):

    c.  ☒  Lessee

    d.  ☐  Other (*specify*):

    e.  ☒  Debtor  ☐ did  ☒ did not   list the Property in the schedules filed in this case.

5.  ☐  The lease matured or was rejected on (*date*) _____:

    a.  ☐  rejected

        (1)  ☐  by operation of law.

        (2)  ☐  by order of the court.

    b.  ☐  matured.

6.  Movant has a perfected security interest in the Property.

    a.  ☐  A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor to Movant is attached as Exhibit _____.

    b.  ☒  The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for by state law.  True and correct copies of the following items are attached to this motion:

        (1)  ☒  Certificate of title ("pink slip") (Exhibit _2_____).

        (2)  ☒  Vehicle or other lease agreement (Exhibit _1_____).

        (3)  ☐  Security agreement (Exhibit _____).

        (4)  ☐  Other evidence of a security interest (Exhibit _____).

    c.  ☐  The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided for by state law.  True and correct copies of the following items are attached to this motion:

        (1)  ☐  Security agreement (Exhibit _____).

        (2)  ☐  UCC-1 financing statement (Exhibit _____).

        (3)  ☐  UCC financing statement search results (Exhibit _____).

        (4)  ☐  Recorded or filed leases (Exhibit _____).

        (5)  ☐  Other evidence of perfection of a security interest (Exhibit _____).

    d.  ☐  The Property is consumer goods.  True and correct copies of the following items are attached to this motion:

        (1)  ☐  Credit application (Exhibit _____).

        (2)  ☐  Purchase agreement (Exhibit _____).

        (3)  ☐  Account statement showing payments made and balance due (Exhibit _____).

        (4)  ☐  Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

    e.  ☐  Other liens against the Property are attached as Exhibit _____.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                             Page 7                                 **F 4001-1.RFS.PP.MOTION**

7.  Status of Movant's debt:

    a.  The amount of the monthly payment: $ _3,997.19_____.

    b.  Number of payments that became due and were not tendered:  ☐ prepetition  ☒ postpetition.

    c.  Total amount in arrears: $ _23,983.14_____.

    d.  Last payment received on (*date*): _01/03/2024_.

    e.  Future payments due by the anticipated hearing date (*if applicable*): _____
       An additional payment of $ _3,997.19_____ will come due on (*date*) _04/02/2024_, and on
       the _2nd_____ day of each month thereafter.  If the payment is not received by the _____
       day of the month, a late charge of $ _____ will be charged under the terms of the loan.

8.  ☒  Attached as Exhibit _4_____ is a true and correct copy of a POSTPETITION payment history that accurately
    reflects the dates and amounts of all payments made by the Debtor since the petition date.

9.  Amount of Movant's debt:

    a.  Principal:........................................................................................................ $ _296,827.32_____
    b.  Accrued interest: ........................................................................................ $ 0.00_____
    c.  Costs (attorney's fees, late charges, other costs):................................... $ 0.00_____
    d.  Advances (property taxes, insurance): ...................................................... $ _____
    e.  TOTAL CLAIM as of _03/28/2024_:........................................................... $ _296,827.32_____

10. ☐  (*Chapter 7 and 11 cases only*) Valuation: The fair market value of the Property is: $ _____.
    This valuation is based upon the following supporting evidence:

    a.  ☐  This is the value stated for property of this year, make, model, and general features in the reference guide
       most commonly used source for valuation data used by Movant in the ordinary course of its business for
       determining the value of this type of property.  True and correct copies of the relevant excerpts of the most
       recent edition of the reference guide are attached as Exhibit _____.

    b.  ☐  This is the value determined by an appraisal or other expert evaluation.  True and correct copies of the
       expert's report and/or declaration are attached as Exhibit _____.

    c.  ☐  The Debtor's admissions in the Debtor's schedules filed in the case.  True and correct copies of the relevant
       portions of the Debtor's schedules are attached as Exhibit _____.

    d.  ☐  Other basis for valuation (*specify*):

---

**NOTE:**  If valuation is contested, supplemental declarations providing additional foundation for the
opinions of value should be submitted.

---

11. Calculation of equity in Property:

    a.  ☐  **11 U.S.C. § 362(d)(1) - Equity Cushion:**

       I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s)
       senior to Movant's debt is $ _____ and is _____% of the fair market value of the
       Property.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                           Page 8                                  **F 4001-1.RFS.PP.MOTION**

b. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ _____.

12. ☒ The fair market value of the Property is declining because:
The Property is a motor vehicle and a depreciating asset.

13. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

14. ☐ Movant regained possession of the Property on (*date*) _____, which is:  ☐ prepetition  ☐ postpetition.

15. ☒ (*Chapter 12 or 13 cases only*) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (*date*) _12/07/2023_
A plan confirmation hearing is currently scheduled for (or concluded on) (*date*) 12/07/2023_
The plan was confirmed on (*if applicable*) (*date*) _01/03/2024_

b. Postpetition <u>preconfirmation</u> payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| 4 | 0 | $ 3997.19 | $ 15988.76 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. <u>Postconfirmation</u> payments due BUT REMAINING UNPAID after the plan confirmation date (*if applicable*):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| 2 | 0 | $ 3997.19 | $ 7994.38 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:           $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                  $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:           $ [            ]

TOTAL POSTPETITION DELINQUENCY:           $ 23,983.14

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                        Page 9                                        **F 4001-1.RFS.PP.MOTION**

g. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (*specify*):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property:

      (1) Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      (2) Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      (3) Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      ☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

      ☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 10                                    **F 4001-1.RFS.PP.MOTION**

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4.3.2024 | Angeles Prado | _____ |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                              Page 11                              F 4001-1.RFS.PP.MOTION

**SUPPLEMENT TO MANDATORY FORM, F 4001-1.RFS.PP.MOTION
PERSONAL PROPERTY DECLARATION, AS PERMITTED BY
LBR 9009-1(b)(4)(B)**

I am employed as a Bankruptcy Account Manager of Midway HFCA LLC LSR ("Movant").

# Exhibit 1



## CALIFORNIA MOTOR VEHICLE LEASE AGREEMENT - CLOSED END

**1. LESSEE AND LESSOR:**

| LESSEE (and CO-LESSEE, if any) Name and Address: | LESSOR (Dealer) Name and Address: |
|---|---|
| Elmer Morales<br>4761 Lindstrom Ave<br>Irvine, CA 92604 | **MIDWAY HFCA LLC**<br>**4751 WILSHIRE BLVD. SUITE 110**<br>**LOS ANGELES, CA 90010** |
| NUMBER: | LEASE DATE (DELIVERY DATE) 09/02/2022 |

The word "**you**" and "**yours**" mean the Lessee and Co-Lessee, if any. The words "**we**," "**us**," and "**our**" mean the Lessor and any party to whom this lease agreement ("Lease") is signed. You agree to lease the leased vehicle described below ("Vehicle"), with all equipment, parts and accessory, from us subject to the terms and conditions set forth on the front and back of this lease. The consumer lease disclosures contained in this Lease are also made on behalf of the Assignee (as defined below).

## 2. VEHICLE DESCRIPTIONS

A. LEASED VEHICLE _____ New (not previously titled)   **X**   Used (previous titled)

| Year | Make | Model | Body Style | License No. | Odometer | Vehicle Identification No. |
|---|---|---|---|---|---|---|
| 2020 | LAMBORGHINI | Huracan EVO | Convertible 2D Spyder 5.2L | | 4859 | ZHWUT5ZFXLLA14904 |

The vehicle will be used primarily for personal, family, or housedhold purposes. However, if you initial below, the Vehicle will be used primarily for business purposes:

Lessee Initials: _____   Co-Lessee Initials: _____

**TRADE-IN VEHICLE:**   Year _____   Make _____   Model _____

| **3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY** (Itemized below)*<br><br>$ **75,000.00** | **4. MONTHLY PAYMENTS:**<br>A. Your next Monthly Payment of $ 3,997.19 is due on 10/02/2022 , followed by 58 payments of $ 3,997.19 due on the 2 of each month beginning on 11/02/2022 .<br>B. The total of your Monthly Payments is $ 239,831.40 | **5. OTHER CHARGES** (Not part of your Monthly Payment)<br><br>Vehicle Return Fee: (if you do not purchase the vehicle)<br>**Total:** $ 350.00 | **6. TOTAL OF PAYMENTS** (The amount you will have paid by the end of the Lease)<br>$ 311,184.21<br>(The sum of Sections 3 plus 4(B plus 5, minus Sections 7(A)(3), minus 7(A)(4). |

## 7. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**A. Amount Due at Lease Signing or Delivery**

| | |
|---|---|
| (1) Capitalized Cost Red Incl Tax | $ 66,122.36 |
| (2) Refundable Security Deposit | $ |
| (3) First Monthly Payment | $ 3,997.19 |
| (4) Bank Initiation Fee | $ 2,149.61 |
| (5) Registration Fees | $ 2,581.00 |
| (6) Doc Fee | $ 91.59 |
| (7) Smog Fee/ Other | $ 58.25 |
| (8) Total | $ 75,000.00 |

**B. How the Amount Due at Lease Signing or Delivery will be paid:**

| | |
|---|---|
| (1) Net Trade-in Allowance | $ 0 |
| (2) Rebates and Noncash Credits | $ 0 |
| (3) Amount to be Paid in Cash | $ 75,000.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| (4) Total | $ 75,000.00 |

## THERE IS NO COOLING OFF PERIOD

California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this lease simply because you change your mind or, decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the lessor or for legal cause, such as fraud.

You have the right to return the vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.

**NOTE: AGREEMENT INCLUDES 7 PAGES- PLEASE SIGN EACH PAGE AT BOTTOM: X** _____   **X** _____

Lessee            Co-Lessee            Page 1 of 7

## 8. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:

| | |
|---|---|
| **A. Gross Capitalized Cost:** The agreed upon value of the Vehicle ($ $328,995.00 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) | $328,995.00 |
| **B. Capitalized Cost Reduction:** The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash that you pay that reduces the Gross Capitalized Cost | - $61,366.46 |
| **C. Adjusted Capitalized Cost:**     The amount used in calculating your Base Monthly Payment | = $267,628.54 |
| **D. Residual Value:** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment | - $163,500.00 |
| **E. Depreciation and Any Amortized Amounts:** The amount charged for the Vehicle's decline in value through normal used and for otheritems paid over the Lease Term | = $104,128.54 |
| **F. Rent Charge:**   The amount charged in addition to the Depreciation and any Amortized Amounts | + $118,452.60 |
| **G. Total of Base Monthly Payments:** The Depreciation and any Amortized Amounts plus the Rent Charge | = $222,581.14 |
| **H. Lease Term:**     The number of months in your Lease                          **Divided by** | 60 |
| **I. Base Monthly Payment:** | = $3,709.69 |
| **J. Monthly Sales/Use Tax:** | + $287.50 |
| **K.** _____ | + |
| **L. Total Monthly Payment ("Monthly Payment")** | $ $3,997.19 |

**Early Termination:** You may have to pay a substantial charge if you end this lease early. ***This charge maybe up to several thousand dollars*** . The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

9     EXCESSIVE WEAR AND USE: You may be charged for Excess Wear and Use based on our standards for normal use and for mileage in excess of: 83.00   miles per month, for a total of: 1,000.00   miles per year,   5,000.00   Over Lease at the rate of: 350.00   cents per mile.  No rebate or credit will be paid to you if the mileage is less than the specified amounts.

10. PURCHASE OPTION AT END OF LEASE TERM: You have an option to purchase the Vehicle at the end of the Lease Term if the Lease has not been terminated and all payments and monies due under the terms of the Lease have been paid.  The purchase price is the sum of: (1) the Residual Value; plus (2) a Purchase Option Fee of $250; plus (3) any official fees, taxes and other charges related to purchase of the Vehicle; plus (4) any amounts necessary to prepare the Vehilce to conform with the legal requiremetns for sale.

Other Important Terms: See all 7 pages of this Lease for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and defaul charges, insurance, and any security interest, if applicable.

## 11. ITEMIZATION OF GROSS CAPITALIZED COST

| | | | |
|---|---|---|---|
| A. Agreed Upon Value of Vehicle | $ 325,000.00 | F. Lease Acquisition Fee | $ _____ |
| B. Warranty Contract | $ 0.00 | G. Sales/Luxury Tax | $ 0 |
| C. Locating Device | $ 0.00 | H. Credit Life and/or Disability Insurance | $ 0 |
| D. GAP Insurance | $ 3,995.00 | I. Other(Describe) _____ | $ 00 |
| E. Outstanding Prior Loan | | J. Other(Describe) _____ | $ 0 |
| Balance or Lease Balance | $ 0.00 | K. Gross Capitalized Cost | $ 328,995.00 |

## 12. ESTIMATED OFFICIAL FEES AND TAXES

The estimated total amount you will pay for official and licenase fees, registration, title and taxes, including but not limited to personal property taxes, over the term of your Lease, whether included with your monthly payments or assesed otherwise: $ _____

## 13. WARRANTIES

If the vehicle is new, it is covered by the manufacturer's standard new vehicle warranty.

If the Vehicle is new or used, it is not covered by any other express warranty unless identified below:

__xx__ The remainder of the manufacturers new vehicle warranty if applicable

_____ An extended warranty you have purchased from the manufacturer or other third party provider

## GAP LIABILITY NOTICE

**In the event of theft or damage to the vehicle that results in a total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible.  THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT.  Optional coverage for the GAP amount may be offered for an additional price.**

You expressly agree and understand that you have selected and agreed to lease the vehicle "As Is". Even if the vehicle is subject to a  warranty, WE MAKE NO WARRANTY EITHER EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE VEHILCE OR ANY PART OR ACCESSORY OF THE VEHICLE, ITS MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, or as to any obvious or hidden defects in material,workmanship or otherwise. No such defect or unfitness shall in any way affect your obligations to comply with terms of this Lease



Lessee                                    Co-Lessee

Page 2 of 7

**14. OPTIONAL MECHANICAL BREAKDOWN PROTECTION**

By initializing below, you have decided to purchase the optional Mechanical Breakdown Protection ("MBP") coverage. You understand that these products are NOT required to obtain the Lease and will not be provided unless you sign below and agree to pay the additional cost. MBP covers the repair of certain mechanical breakdowns of the vehicle. This protection ends: _____ months from the Lease Date or when the Vehicle's odometer shows: _____ miles, whichever occures first. You have reviewed a copy of the contract describing the terms and protections of the MBP.

MBP Company Name: _____**N/A**_____

Initials

__**N/A**__ You choose to purchase an MBP contract for $ _____**N/A**_____ and pay for it during the lease term or

__**N/A**__ You have paid cash for the MBP contract.

**15 INSURANCE VERFICATION**

You acknowledge that you have obtained insurance witht the endorsement required by the Lessee and with coverages at least as great as those required by this Lease (see Section 19). Your Insurance is provided by:

| Insurance Co. | Agent's Name | Agent's Address | Agent's Phone No. |
|---|---|---|---|
|  |  |  |  |

You authorize us to verify this information with the above insurance company at any time during the Lease Term. You agree to immediately notify us in writing if any of this information changes

16    This Lease constitutes the entire agreement between you and us, and no other agreement in any waymodifying any of the terms hereof will be binding upon us unless made in writing and signed by us. All prior agreements are superceded. If any of the provisions of this Lease are determined to be unenforceable, the remaining provisions will not be affected.

X _____ (Lessee Signature)    X _____ (Co-Lessee Signature)

17    SIGNATURES

YOU AGREE TO ALL OF THE PROVISIONS ON ALL PAGES OF THIS LEASE AND YOU REPRESENT THAT YOU HAVE READ ALL PAGES OF THIS LEASE. THIS LEASE IS NOT VALID UNLESS SIGNED BY BOTH LESSOR AND LESSEE. IF THERE IS A LESSEE AND CO-LESSEE, YOU ARE JOINTLY AND SEVERALLY LIABLE FOR THE OBLIGATIONS UNDER THIS LEASE.

---

Notice to the lessee: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled; (2) You are entitled to a completely filled in copy of this agreement; (3) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidencec by this contract.

s/s_____              _____
       Lessee                                   Co-Lessee

Warning - Unless a change is included in this agreement for public liability or property damage insurance, payment for that coverage is not provided by this agreement

s/s_____              _____
       Lessee                                   Co-Lessee

Lessee has the right to return the vehicle, and receive a refund of any payments made if the credit application is not approved, unless non-approval results from an incomplete application or from incorrect information provided by the lessee

s/s_____              _____
       Lessee                                   Co-Lessee

California law does not provide for a "cooling off" or other cancellation period for the vehicle leases. Therefore, you cannot cancel this lease simple because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. You may only cancel this lease with the agreement of the lessor or for legal cause, such as fraud.

s/s_____              _____
       Lessee                                   Co-Lessee

**YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE**

---

**INDIDUAL LESSEE SIGNATURE(S)**

| Lessee Signature | Co-Lessee Signature |
|---|---|
| X | X |

**BUSINESS LESSEE SIGNATURE**

| Name of Authorized Representative | Signature and Title of Authorized Representative |
|---|---|
| X | X |

**LESSOR SIGNATURE**

Signature of Lessor's Authorized Representative X

                                                     Page 3 of 7

    Lessee                       Co-Lessee

**18. LATE CHARGE: RETURNED INSTRUMENT CHARGE**

If all or any portion of a Monthly Payment is not received 10 days after it was due, you will pay a late charge of 5% of the schedule payment. If your delinquency requires additional collection costs or activity, we may also collect a charge based on the costs we incur unless prohibited by law.

If any check, draft or order or other similar instrument is returned to as unpaid for any reason, including not limited to non-sufficient funds, you will pay a return charge of $25 to the extent allowed by applicable law.

**19. INSURANCE**

You shall be responsible for obtaining and maintaining insurance coverage with a duly licensed insurer acceptable to us. All insurance shall be in force continuously during the Lease Term from the time the Vehicle is delivered to you until the Vehicle is returned to us. Such insurance shall provide 10 days prior or written notice to us of any reduction or cancellation of coverage. The form of policy, including any exclusions, must be reasonably acceptable to us. You shall bear the cost of the insurance with at least the following minimum insurance coverage limits:

- **A** Liability for body injury or death of (1) **$100,000** each person and **$300,000** each accident or (2) **$300,000** combined single limit coverage
- **B** Liability for property damage of **$50,000** for each accident
- **C** Collision and upset subject to a maximum **$1,000** deductible
- **D** Fire, theft and comprehensive (for passenger cars) or fire, theft and combined additional insurance (for trucks) and
- Uninsured motorist coverage and/or personal injury protection as required by law in the state where the Vehicle is kept

**You must list the Loss Payee and Additional Insured as Midway HFCA, LLC in all policies covering the Vehicle. You shall furnish us a certificate of insurance, evidencing the issuance of a policy or policies for the Vehicle which complies with the terms of this Lease. You shall at all times comply with all of the conditions of the insurance policy. In the event that the insurance coverage is not obtained, the Vehicle shall not be used by you and will be returned to and stored by us at your expense until the proper coverage is obtained.**

You must promptly report to us in writing all accidents damage to the Vehicle and collisions irrespective of fault injury, loss or damage and any suit demand or claim whether or not justified. You must cooperate fully with us and the insurer in all accident investigation, claim and litigation procedures.

You will release to us all insurance proceeds for loss or damage to the Vehicle. You will pay for all repairs that are not covered by insurance proceeds. You shall pay us upon demand any disbursement we make on your behalf under this Section 19.

**20. VEHICLE OPERATION**

**A** **MAINTENANCE, REPAIRS, AND OPERATING EXPENSES.** You, at your sole cost and expense, will: **(1)** maintain the Vehicle in accordance with the manufacturer's warranty maintenance schedule and keep documentation as proof; **(2)** immediately make all necessary and required repairs and purchase only manufacturer approved parts which will accrue to our benefits and become our property; **(3)** pay all costs and expenses of whatever nature resulting from the use and operation of the Vehicle, including , but not limited to, expenses for gasoline, oil, lubrication, antifreeze, adjustments, tune-ups, repairs, tires, tubes, storage, parking, washing, tools, tolls, fines, towing and servicing of any kind; and **(4)** comply with all recall notices.

**B** **VEHICLE USE AND AUTHORITY TO OPERATE.** Unless otherwise provided in this Lease, you agree that the Vehicle will be used primarily for personal, family or household purposes. You will comply with, and will not violate, nor permit anyone else to violate, the applicable laws and regulations of local, state and federal governments concerning the operation of motor vehicles. You will not use or permit anyone else to use the Vehicle for unlawful purposes. In addition, the Vehicle will not be **(1)** used or operated by persons other than your employees, agents and member of your immediate family, all of whom must be properly authorized and licensed to operate the Vehicle and will not be under the influence of alcohol or drugs while operating the Vehicle; **(2)** used for driver's training purposes or to transport passengers or goods for hire; **(3)** used or permitted to be used for any purpose which would cause any required insurance coverage to be suspended or canceled; **(4)** used in a reckless or negligent manner, or in excess of its rated capacity; and **(5)** used outside of the continental United States except for a period not to exceed 30 days with prior written consent.

**C** **TITLE, REGISTRATION, TAXES AND FEES.** The Vehicle is duly owned by us and will be titled and registered in our name, duly recorded, and will bear valid except the right of use, subject to the terms and conditions of this Lease. **You will pay when due: (1)** all sales, use, excise, personal, personal property, ad valorem, or other taxes, except your income taxes; **(2)** all assessments, fees, and charges payable with respect to the ownership, possession, rental, transportation or delivery of the Vehicle; **(3)** all fees and expenses resulting from licensing, registration, inspection, or other governmental requirements, now and hereafter existing; and **(4)** all fees, assessments and charges resulting from you moving to another locale within the continental United States.

**21. OPTION TO PURCHASE**

**A** **END OF LEASE TERM:** If the Lease has not been terminated and all payments and months due under the terms of the Lease have been paid, you will have the option to purchase the Vehicle at the end of the Lease Term for the sum of **(1)** the Residual Value plus **(2)** a Purchase Option Fee of $250 plus **(3)** any official fees, taxes and other charges related to purchase of the Vehicle plus **(4)** any amounts necessary to prepare the Vehicle to conform with the legal requirements for sale.

**B** **PRIOR TO END OF LEASE TERM:** You may purchase the Vehicle at any time during the Lease Term if the Lease has not already been terminated, all payments and monies then due have been paid and you are not otherwise in Default on the Lease. The purchase price will be **(1)** the Early Termination Liability set forth in Section 25(C) below, excluding the item shown in Section 25(C)(8) plus **(2)** any official fees, taxes, and other charges related to purchase of the Vehicle plus **(3)** any amounts necessary to prepare the Vehicle to conform with the legal requirements for sale.

**22. VEHICLE RETURN**

If you have not chosen to purchase the Vehicle, you agree to return the Vehicle either on the last day of the scheduled Lease Term or on the date of early termination. You agree to return the Vehicle to a location acceptable to us. For your convenience, you may return the Vehicle up to 7 days before the end of the schedule Lease Term. Returning the Vehicle during this convenience period will not result in any early termination credits or charges.

**You are not entitled to keep the Vehicle past the end of the scheduled Lease Term or the date of early termination without our consent.** If you do keep the Vehicle past the end of the scheduled Lease Term or the date of early termination, you will continue to pay us the required Monthly Payment on the due date on which you were required to make payments to us during the Lease Term. In addition, you will pay us for any damage or expense we incur because you keep the Vehicle past the end of the scheduled Lease Term or the date of early termination.

**23. STANDARD OF EXCESS WEAR AND USE**

If you return the Vehicle at the end of the scheduled Lease Term, we will apply the following standards and charges for excess wear and use:

**A** Except for reasonable wear and use, the Vehicle will be in good condition together with all original accessories and options when returned. The Vehicle must pass any inspection that required by law.

**B** The Vehicle will have a matching set of tires with at least 1/8 inch of the tread remaining.

**C** The engine, drive train and other mechanical and electrical parts shall operate properly and not be damaged.

**D** There will be no scratches, dents, pits, rust areas, mismatches of paint or cracks in the fenders, bumpers, doors, grill, hood, trunk or roof. There will be no cracks in the windshields or windows and the interior will not be damaged. No special identification will appear on the Vehicle.

**E** It is your obligation to repair any damage resulting from the removal of a cellular phone or radar detector or other similar type of equipment. Repairs of such damage are subject to our approval and acceptance.

**24. SCHEDULED TERMINATION**

Except for early termination, Default and the exercise of your option to purchase at end of the Lease Term, this Lease will terminate or end upon:
**A** the end of the scheduled Lease Term;
**B** return of the Vehicle to us; and
**C** payment to us at the time you return the Vehicle, or as soon as the charges can reasonably be determined, of the sum of: **(1)** the Vehicle Return Fee; **plus (2)** charges for excess wear and use, representing the costs we incur to make any necessary repairs, replacements and other charges so that the Vehicle meets the standards set forth in Section 23 above; **plus (3)** charges for excess mileage due under Section 9 above; **plus (4)** any other amounts due and payable under this Lease.

Page 4 of 7

Lessee                                    Co-Lessee

Exhibit 1, Page 4

If the odometer malfunctioned or was tampered with and you estimate mileage shown on the odometer, you agree to pay the amount we estimate the Vehicle's market value has been reduced by reason of additional miles not reflected on the odometer, the inability to determine the Vehicle's actual mileage, or both.

## 25. EARLY TERMINATION

**A   LESSEE'S RIGHT TO TERMINATE EARLY.** If you are not in Default, you can terminate this Lease at any time be returning the Vehicle to us. If you do not exercise your option to purchase, the charge for such early termination is the Early Termination Liability defined below.

**B   LESSOR'S RIGHT TO TERMINATE EARLY.** We may terminate this Lease at any time if you are in Default. If you do not exercise your option to purchase, upon such termination we shall be entitled to the Early Termination Liability defined below

**C   EARLY TERMINATION LIABILITY.** Early Termination Liability is calculated as follows:

(1) All Monthly Payments overdue and any other amounts that are due or past due at the time of early termination; plus

(2) Any official fees and taxes imposed in connection with early termination of the Lease; plus

(3) Any reasonable court costs; attorneys' fees and other collection costs that we pay to recover, store, and sell the Vehicle, unless prohibited by law; plus

(4) An ET Charge equal to $500 plus the number of Monthly Payments shown in the chart below, which is based on the percentage of months in the Lease Term which have expired (this percentage is calculated by dividing the number of months expired in the Lease Term by the total number of months in the Lease Term); plus

| % of Months in Lease Term Expired | Monthly Payment multiplied by this number |
|---|---|
| **If the original term is 0-36 month** | |
| 0-50% | 1.00 |
| 51-75% | 0.75 |
| 76-89% | 0.50 |
| 90-100% | 0.00 |
| **If the original term is 37-48 month** | |
| 0-50% | 1.50 |
| 51-75% | 1.25 |
| 76-89% | 1.00 |
| 90-100% | 0.00 |
| **If the original term is 49-60 month** | |
| 0-50% | 1.75 |
| 51-75% | 1.50 |
| 76-89% | 1.25 |
| 90-100% | 0.00 |

(5)   The Residual Value; plus

(6)      The sum of your remaining or unapplied Base Monthly Payments until the end of the Lease Term; minus

(7)   Unearned Rent Charges included in your remaining or unapplied Base Monthly Payments calculated according to the Actuarial method. The term "actuarial method" means the method of allocating Base Monthly Payments between: (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charge and any remainder is subtracted from, or any deficiency is added to the balance of the Adjusted Capitalized Cost; minus

the Realized Value of the Vehicle.

**D   REALIZED VALUE.** The Realized Value of the Vehicle may be determined in one of the following ways:

(1) Once the Vehicle is returned or recovered, the net amount received by us upon the wholesale sale of the Vehicle in a commercially reasonable manner, or the highest of any bids received for the sale of the vehicle at wholesale for cash or

(2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value

## 26. DEFAULT AND REMEDIES

**A   DEFAULT.**   At our option, we may terminate the Lease before the end of the Lease Term under any of the conditions listed below, each of which constitutes a default ("Default"):

(1)   You do not make a payment when it is due.

(2)   You fail to keep any promises you make in connection with Lease.

(3)   You are the subject of a proceeding in bankruptcy, dissolution, receivership or insolvency against you and your property or you make an assignment for the benefit of creditors.

(4)   You fail to meet the minimum insurance requirements of the Lease or the insurance company refuses to insure you or others operating the Vehicle.

(5)   You have made any material misrepresentations on your Lease Application concerning credit or insurance information.

(6)   Your driver's license is suspended, revoked, cancelled or is otherwise restricted.

(7)   **You assign, transfer or sublease the Vehicle**;

(8)   You fail to return the Vehicle at the end of the Lease Term or earlier as agreed in the Lease

(9)   You die or declared incompetent

(10)  You fail to notify us in writing within 30 days after you move

(11)  The Vehicle's odometer shows any evidence of tampering or alteration or

(12)  The Vehicle is seized, confiscated or levied upon by governmental or legal process

**B   REMEDIES.** If you Default, we will have all the rights and remedies provided by law. We will have the right to sue you for damages, terminate the Lease and take the Vehicle without prior demand, unless otherwise provided by law. We may require you to return the Vehicle or make it available to us at a location that is reasonably convenient for both of us. If we take the Vehicle, we may enter the premises where the Vehicle is stored and remove it. However, we may not breach the peace or unlawfully enter onto your premises in doing so. We may take any property in the Vehicle at the time of the retaking and hold it for you. Our retaking of the Vehicle does not release you from any obligation under the Lease.

Upon default, we may cancel any MBP contract or any other optional product or service purchased with this Lease and apply any refunds therefrom to the amounts you owe us.

## 27. VEHICLE THEFT, LOSS OR DESTRUCTION

If the Vehicle is subject to a total loss due to collision, destruction or theft without recovery, this Lease will, at our option, either terminate or continue with a substitute Vehicle of equal value and comparable condition, mileage and accessories. If the Lease is terminated under this Section 27, you will pay us the Early Termination Liability. However, if you had in effect the vehicle insurance required by the Lease at the time of the total loss and we receive the insurance proceeds to compensate for the total loss, then, instead of the Early Termination Liability, you will pay to us the sum of **(1)** all Monthly Payment overdue and any other amounts that are due or past due at the time of early termination; plus **(2)** the amount of any deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss of the Vehicle.

## 28. REIMBURSEMENT

To the fullest extent permitted by law, you will reimburse us and hold us free and harmless from any liability or expense, including reasonable attorneys' fees

Lessee                                                    Co-Lessee

to the extent permitted by applicable law, which we may suffer as a result of any claim by any person(s), including but not limited to you or your agents or employees, arising out of or resulting from use of the Vehicle or its contents, whether such claim is based on negligence, breach of contract, breach of warranty, absolute liability or otherwise.

You agree to pay when due all parking, traffic, or other fines and penalties that are imposed on the Vehicle on any driver of the Vehicle during the Lease Term or until the Vehicle is returned to the Lessor. If you failed to pay, you will immediately on demand reimburse us for every such fine or penalty that must be paid on your behalf and pay us a $25 administration fee as permitted by applicable law.

## 29. REFUNDABLE SECURITY DEPOSIT

Your Refundable Security Deposit may be used by us to pay all amounts that you fail to pay under this Lease. Upon termination of the Lease, we will refund to you any portion of the Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will neither be paid to you nor applied to reduce obligations under this Lease.

## 30. SECURITY INTEREST

You grant us a security interest to the extent permitted by state law below in the property listed below to secure performance of your obligations under this Lease **(1)** in loss proceeds of any Vehicle insurance, and **(2)** in the proceeds of any MBP contract, or credit life or disability insurance purchased with this Lease if its price is included in the Monthly Payment.

## 31. GENERAL

**A TRANSFER OF INTEREST.** You agree to defend our title to the Vehicle. You promise not to assign, transfer, sublease or pledge your rights under this Lease to any other person or entity, or to give anyone or allow anyone to obtain a security interest or lien in the Vehicle under this Lease. You understand and agree that we may assign or transfer our rights under this Lease and upon notification to you of such action, you agree to make payment as due to the assignee.

**B GOVERNING LAW.** This Lease and any agreement created in connection with this Lease will be construed and enforced in accordance with the laws of the state where you sign them

**C ODOMETER STATEMENT.** Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement and return it to us or making a false statement therein may result in fines and or imprisonment. You will be provided an odometer disclosure statement to complete prior to the termination of the Lease

**D WAIVER SETOFF.** We may waive or delay the enforcement of our rights under this Lease without affecting our rights on future defaults. Subject to applicable law, we may set off and apply any monies that we may owe you to your obligations under the Lease at any time and from time to time, either before or after the termination of this Lease or your Default under this Lease without demand or notice

**E Notification of Installation of GPS Tracking Device for Vehicle Location & Consent; Deactivation/Destruction/Removal of Installed GPS Tracking Device Prohibited:**

Take Notice that Lessor has installed a Global Positioning System ("GPS") tracking device on the leased vehicle. Lessee acknowledges and understands the California Penal Code Section 637.7 prohibits any person or entity from using "an electronic tracking device to determine the location or movement of a person" via a "vehicle or other moveable thing" except when the registered owner, lessor or lessee has consented to the use of the electronic tracking device. Lessee hereby consents to Lessor's installation of a GPS tracking device on the leased vehicle for the purpose of protecting Lessor's interest in the leased vehicle. Lessor acknowledges that it will only activate the device to track, locate and/or recover the vehicle in the event it is notified of the vehicle's theft or loss, or in the event of Lessee's Default on any of the terms of the lease agreement. Lessor may furnish information on the location of the vehicle to its agents for purposes of locating, tracking and/or repossessing of the leased vehicle. Lessee's understands that the deactivation, removal or destruction of the installed GPS tracking device by Lessee is strictly prohibited and constitutes an event of default on the terms of the lease agreement as wells as grounds for immediate repossession.

## 32. ARBITRATION AGREEMENT

**A MANDATORY ARBITRATION:** Any "Dispute" between the Parties shall be resolved by a neutral, binding arbitration, and not by a court. This procedure applies to any dispute defined herein, the agreement to arbitrate or the arbitrability of any issue. This arbitration agreement applies to the Parties, their respective employees or agents.

**B DISPUTE:** "Dispute" means any action, claim, or controversy of any kind arising out of, in connection with or related to the Parties' transaction(s), relationship or conduct. "Dispute" includes without limitation: claims under federal or state consumer protection laws, tort or contract, statues or common law, at law or in equity, counterclaims, cross-claims, third party claims, or interpleaders.

**C FACTS ABOUT ARBITRATION:** Arbitration is a private and less formal process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present some evidence to the arbitrator. A Party's ability to discover things may be limited. Other rights Parties might have in court might not be available in arbitration. An arbitrator issues an award which a court may then enforce like a court judgement. Courts rarely overturn an arbitrator's award.

**D RULES:** To initiate arbitration, a party shall give written notice to the other(s) of any Dispute by certified mail, return receipt requested. The Notice shall state the nature and factual basis of the Dispute, the names and addresses of all other Parties, the amount in dispute and specific relief requested. The responding Party may answer and set forth any counterclaims. The arbitration will be conducted by one neutral impartial arbitrator and administered by AAA, 1633 Broadway, 10th Fl., New York, New York 10099 (www.adr.org). The arbitrators shall be any attorney or retired judge. The rules governing the arbitration may be assessed at www.adr.org or by calling AAA at +1-800-778-7879. The arbitrator may conduct all necessary preliminary proceedings, provide for the exchange of information and/or discovery, and set the time, date and place of any hearing, after consultation with the Parties. The arbitrator is empowered to grant any type of relief which would be available to you in a Superior court action. The award shall be issued in writing.

**E STANDARDS AND LAWS:** The transaction(s) of the Parties involves interstate commerce and this arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C Section 1 through 16 ("FAA"). The arbitrator shall strictly apply applicable substantive law and statutes of limitation consistent with the FAA and honor recognized claims of privilege. If this agreement was entered into in California, California Code of Civil Procedure §1280 et seq. will also govern such arbitration to the extent that California law is not contradictory to or preempted by federal law. If this agreement was entered into in any other state, the arbitrator shall apply the substantive law of that state to the extent that it is not contradictory to or preempted by federal law.

**F JURY TRIAL WAIVER:** The Parties agree to give up their rights to a trial by a jury.

**G CLASS ACTION WAIVER:** The Parties agree to give up any right to bring a class action lawsuit or class arbitration, or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with the arbitration of others.

**H FEES AND COSTS:** Midway will pay the Arbitrator's fees and arbitration expenses and any other costs associated with the arbitration hearing (recognizing, however, that each side bears its own deposition, witness, expert and attorneys' fees and other expenses to the same extent as if the matter were heard in a court of law). Reasonable attorneys' fees and costs may be awarded by the arbitrator where provided for in accordance with governing law.

**I EXCEPTIONS:** The Parties agree that this arbitration agreement is not applicable to "Small Claims" meaning those claims that can be filed in an appropriate small claims court.

Lessee                    Co-Lessee



## Lease Vehicle Use Acknowledgment

I/We hereby acknowledge that only licensed and insured drivers may operate the Midway leased vehicle at all times.  If I/We are unlicensed or become unlicensed, I/We will not operate the Midway vehicle.  I/We further agree to obey all laws, statutes, ordinances and rules in the operation of the Midway vehicle.

I/We have read and understand this Lease Vehicle Use Acknowledgment.


_____          _____
Lessee                                                              Co-Lessee


_____                                    _____
Date                                                                Date

Lessee                                                    Co-Lessee

# Exhibit 2

**IMPORTANT — BEFORE YOU RELEASE YOUR LIABILITY, PLEASE READ AND FOLLOW INSTRUCTIONS ON THE REVERSE SIDE.
SECTIONS A-J MUST BE COMPLETED IN FULL.        PRINT IN CAPITAL LETTERS – USE BLACK OR BLUE INK**

## NOTICE OF TRANSFER AND RELEASE OF LIABILITY

*MAIL THIS PORTION TO DMV OR FILE ONLINE AT dmv.ca.gov*

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME        FIRST

B. NEW OWNER'S ADDRESS        APT. NUMBER

C. ODOMETER READING (NO TENTHS)

D. CITY        STATE        ZIP CODE

E. DATE OF SALE OR LEASE RETURN

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME        FIRST

G. SELLING PRICE (NO CENTS)
WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS        APT. NUMBER

I. SELLER'S OR LESSEE'S SIGNATURE
X

J. CITY        STATE        ZIP CODE

VEHICLE ID NUMBER        YR. MODEL    MAKE        PLATE NUMBER

**ZHWUT5ZFXLLA14904        2020 LMBO**

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

VEHICLE HISTORY

**AUTOMOBILE**

VEHICLE ID NUMBER        YR MODEL    MAKE        PLATE NUMBER
**ZHWUT5ZFXLLA14904        2020 LMBO**

BODY TYPE MODEL    AX    UNLADEN WEIGHT    FUEL    TRANSFER DATE    FEES PAID    REGISTRATION EXPIRATION DATE
**CV                        G                    NONE        09/08/2023**

YR 1ST SOLD    CLASS    *YR    MO    EQUIPMT/TRUST NUMBER        ISSUE DATE
**2020 MA    2022    00                        10/13/22**

MOTORCYCLE ENGINE NUMBER        ODOMETER DATE        ODOMETER READING
                                **09/02/2022        4859 MI
                                ACTUAL MILEAGE**

REGISTERED OWNER(S)
**MIDWAY HFCA LLC LSR
MORALES ELMER LSE
14271 JEFFREY RD UNIT 105
IRVINE CA 92620                                    -----**

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ X _____
    DATE        SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
    DATE        SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |___|___|___|___|___|___| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE    TRANSFEROR/SELLER SIGNATURE(S)        DATE    TRANSFEREE/BUYER SIGNATURE(S)
        X                                            X
PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY    PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**COMERICA BANK
4751 WILSHIRE BLVD STE 120
LOS ANGELES CA 90010**

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

CA

KEEP IN A SAFE PLACE - VOID IF ALTERED

# Exhibit 3

Stock # ███████

Jan 10, 2024

# Kelley Blue Book

## Lending / Typical Listing Price / Trade-In (Good) BreakDown

### 01/05/2024 - 01/11/2024

### VIN : ZHWUT5ZFXLLA14904

**2020 Lamborghini Huracan EVO Spyder Convertible 2D**          N/A  / $320,486 /  N/A

**V10, 5.2 Liter**................................................................................................ **Included**

**Automatic, 7-Spd w/Dual-Clutch**............................................................... **Included**

**RWD**.................................................................................................................. **$0**

### ***Equipment***

| | | | |
|---|---|---|---|
| Power Door Locks | Included | LED Headlamps | Included |
| Air Conditioning | Included | Traction Control | Included |
| Dual Air Bags | Included | Keyless Entry | Included |
| Power Steering | Included | SiriusXM Satellite | Included |
| Cruise Control | Included | Electronic Stability Control | Included |
| Side Air Bags | Included | Backup Camera | Included |
| Daytime Running Lights | Included | Premium Wheels 19"+ | Included |
| AM/FM Stereo | Included | Power Windows | Included |
| Dual Power Seats | Included | Navigation System | Included |
| F&R Parking Sensors | Included | Push Button Start | Included |
| Alarm System | Included | Leather | Included |
| Tilt & Telescoping Wheel | Included | ABS (4-Wheel) | Included |
| Remote Trunk Release | Included | Bluetooth Wireless | Included |

**Total Value without mileage**................................................................... **N/A  / $320,486 /  N/A**

**\*\*\*Total Value** ........................................................................... **N/A  / $316,117 /  N/A**

Signature  _____                Date : 01/10/2024

**4751 Wilshire Blvd Ste 100, Los Angeles (352) 368-5766**

©**2024 Kelley Blue Book Co., Inc. All rights reserved. As of 01/10/2024 Edition for 90010.**

**Values and pricing are the opinions of Kelley Blue Book, and the actual price of a vehicle may vary.**

**The value and pricing information displayed for a particular vehicle is based upon the specification, mileage and/or condition information provided by the person generating this report.**
**Kelley Blue Book assumes no responsibility for errors or omissions.**

Exhibit 3, Page 1

# Exhibit 4

The resource of this report item is not reachable.

**Payment History**

## CUSTOMER INFORMATION

**Account:** ███████
CA,WF,WPM LEASE

**Dealer:** WPM_MIDWAY -
WPM MIDWAY
LEASING

**Customer:** MORALES, ELMER

**Address1:** 14271 JEFFREY RD
#105

**Address2:**

**City State Zip:** IRVINE, CA 92620

**Home Phone:**

## ACCOUNT INFORMATION

**Contract Dt:** 9/2/22
**Active Dt:** 9/23/22
**Term:** 60
**Paid Term:** 16
**Opening Bal:** 0.00

**Current Bal:** 193,683.02
**Late Chg Bal:** 0.00
**NSF Bal:** 0.00
**Other Bal:** 0.00
**Total Bal:** -163,196.36

**Last Pmt Dt:** 1/3/24
**Next Due Dt:** 8/2/23
**First Due Dt:** 9/2/22
**Rate:** 10.897
**APR:** 10.897

## ACCOUNT DETAIL

| Post Dt | Txn Dt | Description | Amount | Mode | Reason | Reference | Balance Amt |
|---------|--------|-------------|--------|------|--------|-----------|-------------|
| 9/23/22 | 9/2/22 | ACTIVE | 0.00 | | NONE INTERNAL | | 0.00 |
| 9/23/22 | 9/2/22 | FND CASH SALES/ ADVANCE AMOUNT | 328,995.00 | | NONE INTERNAL | | 0.00 |
| 9/23/22 | 9/2/22 | DEPRECIATION | 104,128.54 | | NONE INTERNAL | | 0.00 |
| 9/23/22 | 9/2/22 | RESIDUAL | 163,500.00 | | NONE INTERNAL | | 0.00 |
| 9/23/22 | 9/2/22 | SECURITY DEPOSIT | 0.00 | | NONE INTERNAL | | 0.00 |
| 9/23/22 | 9/2/22 | RENT | 118,452.96 | | NONE INTERNAL | | 0.00 |
| 9/23/22 | 9/2/22 | LEASE RECEIVABLES | 222,581.50 | | NONE INTERNAL | | 222,581.50 |
| 9/23/22 | 9/2/22 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 222,581.50 |
| 9/23/22 | 9/2/22 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 222,581.50 |
| 9/23/22 | 9/2/22 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 222,581.50 |
| 9/23/22 | 9/2/22 | FIRST PAYMENT - *SALES / USE TAX BILLED* | 3,997.19 *287.50* | | | | 218,871.81 |

Jan 10, 2024 1:07 PM

| Post Dt | Txn Dt | Description | Amount | Mode | Reason | Reference | Balance Amt |
|---------|--------|-------------|--------|------|--------|-----------|-------------|
| 9/23/22 | 9/2/22 | FIRST PAYMENT | 3,997.19 | | | | 218,871.81 |
| | | *- LEASE RECEIVABLE BILLED* | *3,709.69* | | | | |
| 9/23/22 | 9/12/22 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 218,871.81 |
| 9/23/22 | 9/12/22 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 218,871.81 |
| 9/23/22 | 9/12/22 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 218,871.81 |
| 10/13/22 | 10/12/22 | LATE CHARGE | 185.48 | | NONE INTERNAL | | 218,871.81 |
| 10/13/22 | 10/13/22 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 218,871.81 |
| 10/13/22 | 10/13/22 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 218,871.81 |
| 10/25/22 | 10/24/22 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 218,871.81 |
| 10/25/22 | 10/24/22 | PAYMENT (Y) | 3,709.69 | WPM NONCASH PAYMENT | CUSTOMER PAYMENT | ACH | 215,162.12 |
| | | *- LEASE RECEIVABLE BILLED* | *3,709.69* | | | | |
| 10/25/22 | 10/24/22 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 215,162.12 |
| 10/25/22 | 10/24/22 | PAYMENT (Y) | 287.50 | WPM NONCASH PAYMENT | CUSTOMER PAYMENT | ACH | 215,162.12 |
| | | *- SALES / USE TAX BILLED* | *287.50* | | | | |
| 11/4/22 | 11/3/22 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 215,162.12 |
| 11/4/22 | 11/3/22 | PAYMENT (Y) | 287.50 | WPM NONCASH PAYMENT | CUSTOMER PAYMENT | ACH-Nov 2022 pmt | 215,162.12 |
| | | *- SALES / USE TAX BILLED* | *287.50* | | | | |
| 11/4/22 | 11/3/22 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 215,162.12 |
| 11/4/22 | 11/3/22 | PAYMENT (Y) | 3,709.69 | WPM NONCASH PAYMENT | CUSTOMER PAYMENT | ACH-Nov 2022 pmt | 211,452.43 |
| | | *- LEASE RECEIVABLE BILLED* | *3,709.69* | | | | |
| 11/12/22 | 11/12/22 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 211,452.43 |

Jan 10, 2024 1:07 PM

| Post Dt | Txn Dt | Description | Amount | Mode | Reason | Reference | Balance Amt |
|---|---|---|---|---|---|---|---|
| 11/12/22 | 11/12/22 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 211,452.43 |
| 11/12/22 | 11/12/22 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 211,452.43 |
| 12/1/22 | 12/1/22 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 211,452.43 |
| 12/1/22 | 12/1/22 | PAYMENT (Y) *- SALES / USE TAX BILLED* *- LEASE RECEIVABLE BILLED* | 3,997.19 *287.50* *3,709.69* | ACH | CUSTOMER PAYMENT | ████████ | 207,742.74 |
| 12/12/22 | 12/12/22 | LATE CHARGE | 185.48 | | NONE INTERNAL | | 207,742.74 |
| 12/12/22 | 12/12/22 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 207,742.74 |
| 12/12/22 | 12/12/22 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 207,742.74 |
| 12/20/22 | 12/20/22 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 207,742.74 |
| 12/20/22 | 12/20/22 | PAYMENT (Y) *- LEASE RECEIVABLE BILLED* *- SALES / USE TAX BILLED* | 3,997.19 *3,709.69* *287.50* | ACI - AGENT - ACH | CUSTOMER PAYMENT | ████████ | 204,033.05 |
| 1/1/23 | 1/1/23 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 204,033.05 |
| 1/1/23 | 1/1/23 | PAYMENT (Y) *- LEASE RECEIVABLE BILLED* *- LATE CHARGE* | 3,997.19 *3,709.69* *287.50* | ACH | CUSTOMER PAYMENT | ████████ | 200,323.36 |
| 1/12/23 | 1/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 200,323.36 |
| 1/12/23 | 1/12/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 200,323.36 |
| 1/12/23 | 1/12/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 200,323.36 |
| 2/1/23 | 2/1/23 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 200,323.36 |
| 2/1/23 | 2/1/23 | PAYMENT (Y) *- LEASE RECEIVABLE BILLED* | 3,997.19 *3,709.69* | ACH | CUSTOMER PAYMENT | ████████ | 196,613.67 |

| Post Dt | Txn Dt | Description | Amount | Mode | Reason | Reference | Balance Amt |
|---------|--------|-------------|--------|------|--------|-----------|-------------|
| 2/1/23 | 2/1/23 | PAYMENT (Y) | 3,997.19 | ACH | CUSTOMER PAYMENT | ███████ | 196,613.67 |
| | | *- SALES / USE TAX BILLED* | *287.50* | | | | |
| 2/10/23 | 2/10/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 196,613.67 |
| 2/10/23 | 2/10/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 196,613.67 |
| 2/12/23 | 2/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 196,613.67 |
| 3/1/23 | 3/1/23 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 196,613.67 |

Jan 10, 2024 1:07 PM

| Post Dt | Txn Dt | Description | Amount | Mode | Reason | Reference | Balance Amt |
|---------|--------|-------------|--------|------|--------|-----------|-------------|
| 3/1/23 | 3/1/23 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 196,613.67 |
| 3/1/23 | 3/1/23 | PAYMENT (Y) | 3,997.19 | ACH | CUSTOMER PAYMENT | ▓▓▓▓▓ | 192,903.98 |
| | | *- LEASE RECEIVABLE BILLED* | *3,709.69* | | | | |
| | | *- SALES / USE TAX BILLED* | *287.50* | | | | |
| 3/8/23 | 3/8/23 | INSURANCE EXPIRED | 0.00 | | NONE INTERNAL | | 192,903.98 |
| 3/12/23 | 3/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 192,903.98 |
| 3/27/23 | 3/13/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 192,903.98 |
| 3/27/23 | 3/13/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 192,903.98 |
| 4/1/23 | 4/1/23 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 192,903.98 |
| 4/1/23 | 4/1/23 | PAYMENT (Y) | 3,997.19 | ACH | CUSTOMER PAYMENT | ▓▓▓▓▓ | 189,194.29 |
| | | *- SALES / USE TAX BILLED* | *287.50* | | | | |
| | | *- LEASE RECEIVABLE BILLED* | *3,709.69* | | | | |
| 4/12/23 | 4/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 189,194.29 |
| 4/12/23 | 4/12/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 189,194.29 |
| 4/12/23 | 4/12/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 189,194.29 |
| 5/1/23 | 5/1/23 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 189,194.29 |
| 5/1/23 | 5/1/23 | PAYMENT (Y) | 3,997.19 | ACH | CUSTOMER PAYMENT | ▓▓▓▓▓ | 185,484.60 |
| | | *- SALES / USE TAX BILLED* | *287.50* | | | | |
| | | *- LEASE RECEIVABLE BILLED* | *3,709.69* | | | | |
| 5/12/23 | 5/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 185,484.60 |
| 5/13/23 | 5/13/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 185,484.60 |
| 5/13/23 | 5/13/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 185,484.60 |

Jan 10, 2024 1:07 PM

| Post Dt | Txn Dt | Description | Amount | Mode | Reason | Reference | Balance Amt |
|---------|--------|-------------|--------|------|--------|-----------|-------------|
| 6/1/23 | 6/1/23 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 185,484.60 |
| 6/1/23 | 6/1/23 | PAYMENT (Y) | 3,997.19 | ACH | CUSTOMER PAYMENT | ▄▄▄▄▄ | 181,774.91 |
| | | *- SALES / USE TAX BILLED* | *287.50* | | | | |
| | | *- LEASE RECEIVABLE BILLED* | *3,709.69* | | | | |
| 6/12/23 | 6/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 181,774.91 |
| 6/12/23 | 6/12/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 181,774.91 |
| 6/12/23 | 6/12/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 181,774.91 |
| 7/12/23 | 7/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 181,774.91 |
| 7/20/23 | 7/13/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 181,774.91 |
| 7/20/23 | 7/13/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 181,774.91 |
| 8/12/23 | 8/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 181,774.91 |
| 8/13/23 | 8/13/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 181,774.91 |
| 8/13/23 | 8/13/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 181,774.91 |
| 9/12/23 | 9/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 181,774.91 |
| 9/12/23 | 9/12/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 181,774.91 |
| 9/12/23 | 9/12/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 181,774.91 |
| 10/12/23 | 10/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 181,774.91 |
| 10/13/23 | 10/13/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 181,774.91 |
| 10/13/23 | 10/13/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 181,774.91 |
| 10/17/23 | 10/17/23 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 181,774.91 |

Jan 10, 2024 1:07 PM

| Post Dt | Txn Dt | Description | Amount | Mode | Reason | Reference | Balance Amt |
|---------|--------|-------------|--------|------|--------|-----------|-------------|
| 10/17/23 | 10/17/23 | PAYMENT (Y) | 3,709.69 | WPM NONCASH PAYMENT | CUSTOMER PAYMENT | Check-Oct pmt | 178,065.22 |
| | | *- LEASE RECEIVABLE BILLED* | *3,709.69* | | | | |
| 10/17/23 | 10/17/23 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 178,065.22 |
| 10/17/23 | 10/17/23 | PAYMENT (Y) | 287.50 | WPM NONCASH PAYMENT | CUSTOMER PAYMENT | Check-Oct pmt | 178,065.22 |
| | | *- SALES / USE TAX BILLED* | *287.50* | | | | |
| 11/12/23 | 11/12/23 | LATE CHARGE | 0.00 | | NONE INTERNAL | | 178,065.22 |
| 11/12/23 | 11/12/23 | BILL/DUE DATE | 3,709.69 | | NONE INTERNAL | | 178,065.22 |
| 11/12/23 | 11/12/23 | SALES / USE TAX | 287.50 | | NONE INTERNAL | | 178,065.22 |
| 11/30/23 | 11/29/23 | ADJUSTMENT TO DEPRECIATION - ADD | 3,679.59 | NONE | INTERAL ADJUSTMENT | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/29/23 | ADJUSTMENT TO SALES / USE TAX - ADD | 11,500.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/29/23 | ADJUSTMENT TO LATE CHARGE - ADD | 2,914.44 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE ADVANCE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE LEGAL BANKRUPTCY EXPENSES | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE REPOSSESSION EXPENSES | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE SERVICING EXPENSES | 0.00 | NONE | | UNDEFINED | 181,744.81 |

Jan 10, 2024 1:07 PM

| Post Dt | Txn Dt | Description | Amount | Mode | Reason | Reference | Balance Amt |
|---------|--------|-------------|--------|------|--------|-----------|-------------|
| 11/30/23 | 11/30/23 | CLOSE SERVICING EXPENSES | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE DAMAGE CHARGE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE DISPOSITION FEE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE EARLY TERMINATION FEE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE LATE CHARGE | 2,997.90 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE NON SUFFICIENT FUND FEE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE OTHER FEES AND TAXES | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE PERIODIC MAINTENANCE FEE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE RENTAL CHARGE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE RENTAL FEE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE FEE USAGE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE EXCESS USAGE FEE | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE INVENTORY | 0.00 | NONE | | UNDEFINED | 181,744.81 |
| 11/30/23 | 11/30/23 | CLOSE LEASE RECEIVABLES | 181,744.81 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | CLOSE SALES / USE TAX | 12,937.50 | NONE | | UNDEFINED | 0.00 |

Jan 10, 2024 1:07 PM

| Post Dt | Txn Dt | Description | Amount | Mode | Reason | Reference | Balance Amt |
|---------|--------|-------------|--------|------|--------|-----------|-------------|
| 11/30/23 | 11/30/23 | CLOSE TERMINATE | 0.00 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | TERMINATE LEASE RECEIVABLES | 18,548.45 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | TERMINATE TAX | 12,937.50 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | TERMINATE FEE RECEIVABLE | 2,997.90 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | INVENTORY | 208,273.50 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | TERMINATE | 0.00 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | CHGOFF LATE CHARGE | 2,997.90 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | CHGOFF SALES / USE TAX | 12,937.50 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | CHGOFF LEASE RECEIVABLE | 181,744.81 | NONE | | UNDEFINED | 0.00 |
| 11/30/23 | 11/30/23 | CHARGED OFF | 0.00 | NONE | | UNDEFINED | 0.00 |
| 1/3/24 | 1/3/24 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 0.00 |
| 1/3/24 | 1/3/24 | PAYMENT (Y) | 3,709.69 | WPM NONCASH PAYMENT | CUSTOMER PAYMENT | ACH-past due | 0.00 |
| | | *- CHGOFF SALES / USE TAX* | *711.79* | | | | |
| | | *- CHGOFF LATE CHARGE* | *2,997.90* | | | | |
| 1/3/24 | 1/3/24 | INTEREST REBATE LEASE | 0.00 | | NONE INTERNAL | | 0.00 |
| 1/3/24 | 1/3/24 | PAYMENT (Y) | 287.50 | WPM NONCASH PAYMENT | CUSTOMER PAYMENT | ACH-past due | 0.00 |
| | | *- CHGOFF SALES / USE TAX* | *287.50* | | | | |

Jan 10, 2024 1:07 PM